UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **NICHOLAS MANTOOTH, on Behalf of** | § | |
| **Himself and on Behalf of All Others** | § | |
| **Similarly Situated,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. : 1:18-cv-00094-** |
| **V.** | § | **CSM** |
| | § | |
| **OPTIMAL ENERGY RESOURCES,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | | |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

I.      FACTUAL AND LEGAL BACKGROUND

A.  **Optimal pays all of its inspectors hourly without overtime.**

Optimal Energy Resources, Inc. ("Optimal" or "Defendant") provides inspectors to various

customers in the oil and gas industry.  Optimal staffs these inspectors to various clients.  The

primary duty of these inspectors is to visually and physically inspect the welds on pipelines, inspect

compressor stations, and verify the qualifications of other welders.[1]  The work of an inspector

entails toiling outside for long hours often in excess of 80 hours a week.[2]  The inspectors that have

joined the case to date performed in a variety of inspection roles.  Plaintiff Mantooth was a

Certified Welding Inspector, Plaintiff Chaisson was a Welding/Utility Inspector, Plaintiff

Gladowski was a coating inspector, Plaintiff Weldon was coating inspector and welding inspector,

---

[1] *See* Exhibit 1-4 Declarations, at ¶ 2.
[2] *See* Exhibit 1-4 Declarations, at ¶¶ 6-7.

1

and Plaintiff Winger was an electrical and instruments inspector.[3]  They all regularly worked overtime hours.[4]

However, despite the fact that Optimal's inspectors work well in excess of 40 hours a week, Optimal pays them no overtime.[5]  Instead, Optimal just paid inspectors the same hourly rate for their overtime and non-overtime hours alike.  In other words, Optimal paid all of its inspectors straight time for overtime.  This fact is demonstrated by the declarations submitted herewith and by the offer letters Optimal provided to each Plaintiff describing his pay structure.[6]  Each of those offer letters provide that the Plaintiffs are to be paid straight time for overtime.

For example, the following language is in Plaintiff Mantooth's offer letter[7]:

| Compensation: | 40.00 per hour worked, for typically a six (6)-day work week, 8-12 hours per day. Paydays are on a 2-week cycle, every other Friday. Working hours will as client directed per the project to safely complete project related duties. One time 12 hours of pay for travel to North Dakota, subject to tax. |
|---|---|

Substantially the same language appears in the offer letters of the other Plaintiffs, different materially only in the hourly rate paid to that inspector.[8]

Unsurprisingly, Plaintiff's compensation when he worked was consistent with the manner in which his offer letter provided he would be paid—he was paid hourly with straight time for overtime.  For example, during the week ending November 5, 2016, Plaintiff worked 26 hours and was paid the same hourly rate for all of his hours.[9]  In the very next week, he worked 48 hours

---

[3] *See* Exhibit 5, Defendant's Interrogatory Responses at No. 9.
[4] *See* Exhibit 1-4, Declarations, at ¶¶ 6-7.
[5] *See* Exhibit 1-4 Declarations, at ¶¶ 6-7.
[6] *See also* Exhibit 5, Defendant's Interrogatory Responses at No. 6, stating that the manner in which each Plaintiff was paid is contained in his respective offer letter.
[7] Exhibit 6 (Mantooth Offer Letter)
[8] Concurrent with the filing of this motion, Plaintiff will also file a motion for leave to file documents under seal to provide the Court with the offer letters for the opt-in Plaintiffs.  Defendant produced these letters as part of its initial disclosures but marked them confidential under the protective order.  Plaintiff has requested that Defendant remove this designation but, to date, Defendant has not responded.  Should the Court grant Plaintiff's Unopposed Motion for Leave to File Exhibits Under Seal, Plaintiff will file these offer letters as Exhibits 12-16.
[9] Exhibit 7 Pay stub

and was paid the same hourly rate for all of those hours too.[10]  However, despite working 8 hours of overtime in this second example week, Plaintiff was not paid a penny of overtime, instead he was just paid his same hourly rate.  His payroll history is replete with similar examples. For instance in various weeks he worked 94 hours, 83 hours, or 82 hours and was always only paid his hourly rate without a cent of overtime.[11]  This pay practice is clearly prohibited by the FLSA and is perhaps one of the most straightforward FLSA violations imaginable.

Optimal contends that Plaintiff and the other inspectors are exempt.  While, as of the filing date of this motion, Optimal has refused to answer any discovery responses detailing how it contends Plaintiff and the other inspectors were paid[12],  any exemption that could reasonably apply under the facts of this case requires the payment on a salary basis.[13]  As the Department of Labor has explained, there are only "limited circumstances" where payments calculated on an hourly rate can qualify as a "salary":

**Can payments computed or calculated on an hourly rate, day rate or shift rate ever qualify as a salary?**

Yes, under limited circumstances. However, the employment arrangement must first include a guarantee of at least the minimum weekly required amount of at least $455 per week, **paid on a salary basis**, regardless of the number of hours, days or shifts worked. In addition, a reasonable relationship must exist between the guaranteed amount and the amount actually earned.

*Department of Labor eLaws-FLSA Overtime Security Advisor,* available at https://webapps.dol.gov/elaws/whd/flsa/overtime/cr2.htm.  Thus, an exempt employee's earnings may "be computed on . . . a hourly . . . basis, without . . . violating the salary basis requirement *if* [1] the *employment arrangement* also includes *a guarantee* of at least the minimum *weekly* required amount [$455] paid on a salary basis regardless of the number of . . . days . . . worked,

---

[10] Exhibit 8 Pay stub
[11] Exhibit 9 Pay Stub Examples
[12] *See* Exhibit 5, Interrogatory Responses at Numbers 6, 13, 14, 19, 20.  The parties are currently working through a discovery dispute surrounding these interrogatories and if Defendant serves amended answers before Plaintiff files a motion to compel, Plaintiff will file a supplement to provide the Court with those amended responses.
[13] *See* 29 C.F.R. 541.100 (executive exemption requires payment on a salary); 29 C.F.R. § 541.200 (administrative exemption requires payment on a salary); 29 C.F.R. § 541.300 (professional exemption requires payment on a salary); 29 C.F.R. § 541.600 (highly compensated exemption requires payment on a salary basis).

*and* [2] a reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b) (emphasis added).  In other words, for an employee compensated on an hourly basis to qualify as salaried, there must be an operative, weekly guarantee.

Under 29 C.F.R. § 541.604(b), the focus remains always on whether there is a **guarantee**. An hourly rate without a guaranteed weekly minimum is not a salary. *Keen v. DXP Enterprises, Inc.*, No. 5:15-CV-137-OLG, 2016 U.S. Dist. LEXIS 81069, at *8-12 (W.D. Tex. June 6, 2016) (29 C.F.R. § 541.604(b) requires a guarantee). For more than 70 years, the Department of Labor has made it clear that the "**distinction** between payment on a salary and payment on [a] daily basis is that the employee paid on a salary basis is **guaranteed** a minimum [amount] for any work performed in the period [which must be at least a week] on which the salary is based." *Dept. of Labor Op. Ltr. FLSA-723* (Dec. 7, 1940) (emphasis added). *See also* Opinion Letter Fair Labor Standards Act (FLSA), 2003 WL 23374601 ("Payment on an hourly basis without an operative salary guarantee does not qualify as a 'salary basis' of payment within the meaning of the regulations.").

Clearly, Optimal does not include a guarantee payment of any sort in its compensation arrangement with Plaintiff, as is obvious from the offer letters which are devoid of any language regarding any guaranteed payment.  Regardless, it appears that Optimal intends to assert the same exemption defense for all of its inspectors, a further reason this case is ideal for collective treatment.

Optimal pays all of inspectors under this same system, as demonstrated by the sworn statements of Plaintiff Mantooth and the other inspectors that have joined this case. Just as Optimal violated the law with respect to Plaintiff Mantooth, so too did it violate the law with respect to its other inspectors.

**B. Even if Optimal paid its inspectors a salary, inspectors are still non-exempt employees and entitled to overtime.**

Optimal paid its inspectors on an hourly basis, not a salary. But, assuming for the sake of argument that its compensation system did pay its inspectors on a salary basis, they would still be entitled to overtime because inspection work is non-exempt work.

In the past decade, at least two different federal courts have determined that inspectors, including specifically pipeline inspectors, were non-exempt as a matter of law. *Zuber v. APC Natchiz, Inc.*, 144 F. App'x 657 (9th Cir. 2005) (pipeline safety inspector was non-exempt as a matter of law); *Zubair v. EnTech Eng'g P.C.,* 808 F. Supp. 2d 592, 595 (S.D.N.Y. 2011).

Moreover, for over 60 years, the United States Department of Labor ("DOL"), through its reports, regulations, opinion letters, and internal handbook, has repeatedly found non-management inspectors to be non-exempt. In the Weiss Report, issued by the DOL in 1949, inspectors were specifically identified multiple times as the type of employee who is not exempt under the duties tests of the administrative exemption:

> [A] supervisor who spot checks and examines the work of his subordinates to determine whether they are performing their duties properly, and whether the product is satisfactory, is performing work which is directly and closely related to his managerial and supervisory functions. However, this kind of examining and checking must be distinguished from the kind which is normally performed by an "examiner", "checker", or "**inspector**" and which is really a **production** operation rather than a part of the supervisory function.

*"Executive, Administrative, Professional Outside Salesman" Redefined, Wage and Hour Division, U.S. Department of Labor, Report and Recommendations of the Presiding* (1949) ("Weiss Report"), p. 34 (attached as Ex. 6).[14]

---

[14] *See also* Ex. 11, Weiss Report, pp. 64 ("An inspector as, for example, for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be "directly related

Similarly, the DOL's regulations have unwaveringly identified inspectors as the type of employee not exempt under the administrative exemption. In fact, according to the current regulations, the administrative exemption does not apply to inspectors:

> Ordinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits.

29 C.F.R. § 541.203(g). The current regulations further state that "[p]ublic sector inspectors or investigators of various types, such as fire prevention or safety, building or construction, health or sanitation, environmental or soils specialists and similar employees, generally do not meet the duties requirements for the administrative exemption because their work typically does not involve work directly related to the management or general business operations of the employer." 29 C.F.R. § 541.203(j).

The pre-2004 regulations similarly made clear that inspectors were non-exempt. "An inspector, such as, for example, an inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be 'directly related to management policies or general business operations' as that phrase is used in § 541.2." 29 CFR § 541.205(c)(2) (2003). In fact, the pre-2004 regulations

---

to management policies or general business operations" as that phrase is used here."); 66 ("A typical example of the application of skills and procedures is ordinary inspection work of various kinds. Inspectors normally perform specialized work along standardized lines involving well established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They may have some leeway in the performance of their work but only within closely prescribed limits.")

also specifically singled out inspectors as the type of employee not exempt under the administrative exemption. *See* 29 CFR § 541.207(c)(2) (2003). Consistent with the relevant regulations, the DOL has always concluded that inspectors are not performing "administrative" work.[15]

In the Economic Report issued with the Preamble to the 2004 amendments to the § 541 Regulations, the DOL specifically identified inspectors as one of the "'blue collar' occupations that are most likely nonexempt under the current and final executive, administrative or professional exemptions." *Defining & Delimiting the Exemptions for Executive, Admin., Prof'l, Outside Sales & Computer Employees*, 69 FR 22,122, 22240 - 43 (Apr. 23, 2004) (OCC code 689/Inspectors, testers and graders; OCC code 796/Production inspectors, checkers and examiners). By the same token, the Bureau of Labor Statistics has specifically identified "inspector" as a "production occupation." Ex. 8, U.S. Bureau of Labor Statistics, Production Occupations (March 29, 2012)[16].

Finally, the DOL's Field Operations Handbook repeatedly identifies inspectors as employees who are non-exempt. The Field Operations Handbook includes specific sections for "Inspectors" (§ 22i20), and "Inspectors or investigators – public sector" (§ 22i21), which make clear that non-supervisory inspectors do not meet the duties requirements for the administrative exemption. Ex. 7, DOL Field Operations Handbook §§ 22i20-22i21.

This historical background demonstrates how consistent the DOL has been in its position that non-supervisory inspectors are non-exempt. Indeed, the *only* time that the DOL has taken the position that *any* inspector is exempt is if they are in a supervisory position and meet the

---

[15] *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1986 WL 1171119 (Aug. 11, 1986) (agricultural inspectors); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1987 WL 1369152 (May 19, 1987) (fire prevention officers whose primary duty was building inspection); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1987 WL 1369139 (Jan. 29, 1987) (zoning inspectors);. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1992 WL 845084 (Mar. 3, 1992) (fire inspectors).

[16] Available at http://www.bls.gov/ooh/production/print/home.htm.

requirements of the executive exemption. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), FLSA 2007-11 (Sept. 17, 2007); DOL Field Operations Handbook § 22i20(b). Against this unbroken chain of authority, Optimal has decided to classify all of its inspectors as exempt.

## II.      ARGUMENTS AND AUTHORITIES

### A. Eighth Circuit district courts have adopted the two-stage certification procedure for FLSA collective actions.

The purpose of the FLSA is to "eliminate" unfair labor practices because such practices "burdens commerce and the free flow of goods," "constitutes an unfair method of competition," and "leads to labor disputes." 29 U.S.C § 202(a), (b). The FLSA allows employees to bring an action against their employers for violation of its hour and wage provisions. *See* 29 U.S.C. §§ 215-216. Specifically, the FLSA provides that an employee may bring this action against his employer on "behalf of himself…and other employees similarly situated." 29 U.S.C. § 216(b). To facilitate the representative action, courts have the authority to authorize notice to potential Plaintiffs. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).

To determine whether a suit brought under § 216(b) may move forward as a collective action, district courts in the Eighth Circuit have adopted a two-step approach to determine whether plaintiffs are "similarly situated" for purposes of § 216(b). *See, e.g., Brennan v. Qwest Commc'ns Int'l, Inc.*, No. Civ. A. 0:07-cv-2024, 2008 U.S. Dist. LEXIS 27080, at *7-9 (D. Minn. Mar. 25, 2008) ("Determining whether Plaintiffs are similarly situated to the proposed class requires a two-step inquiry[.]"); *Petrone v. Werner Enter., Inc.*, No Civ. A. 8:11-cv-401/8:12-cv-307, 2012 U.S. Dist. LEXIS 146324 (D. Neb. Oct. 11, 2012) (same); *Harvey v. AB Electrolux*, 857 F. Supp. 2d 815 (N.D. Iowa 2012) (same); *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (same); *Fast v. Applebee's Int'l, Inc.,* 243 F.R.D. 360, 363–64 (W.D. Mo. 2007)

(same).  **In fact, Plaintiff's counsel has been unable to find one case from the Eighth Circuit that did not apply the two-step method.**

Under the two-step approach, a "plaintiff moves for conditional certification at an early stage in the litigation, wherein a class is certified for notice purposes. Then, at the second step, defendants are allowed the opportunity to move for de-certification at the close of discovery." *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005).  The Fifth Circuit in *Mooney v. Aramco Service Mooney v. Aramc Service, Co.*, 4 F. 3d 1207 (5th Cir. 1995) described the two-step certification process as follows:

> The first determination is made at the so-called "notice-stage." At the notice stage, the district court makes a decision—usually only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
> Because the Court has minimal evidence this determination is made **using a fairly lenient standard and typically results in "conditional certification" of a representative class.** If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Id*. at  1213-1214 (emphasis added).

This first stage typically comes early in the litigation, before the parties have finished discovery. *See, e.g., Brennan v. Qwest Commc'ns Int'l, Inc.*, No. Civ. A. 0:07-cv-2024, 2008 U.S. Dist. LEXIS 27080, at *8 (D. Minn. Mar. 25, 2008) (finding the case to be in the first stage "[b]ecause the parties have not completed discovery."); *Frank v. Gold'n Plump Poultry, Inc.*, No. Civ. A. 0:04-cv-1018, 2005 U.S. Dist. LEXIS 20441, at *7 (D. Minn. Sept. 14, 2005) (first-stage analysis even though the parties had engaged in some discovery but had not completed discovery). "To impose a strict standard of proof [at the conditional certification stage] would unnecessarily

hinder the development of collective actions and would undermine the broad remedial goals of the . . . FLSA." *Garner v. G.D. Searle Pharm. & Co*., 802 F. Supp. 418, 422 (M.D. Al. 1991).

At the first stage, "plaintiffs need only establish a colorable basis for their claim that putative class members were the victims of a single decision, policy, or plan" for a case to be conditionally certified. *Brennan*, 2008 U.S. Dist. LEXIS 27080, at *8 (quoting *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007)). Class members need not be "identical" nor do they need to be "*actually* similarly situated." *Dernovish v. AT&T Ops., Inc.,* No. Civ. A. 09-cv-0015, 2010 U.S. Dist. LEXIS 2127, at *3 (W.D. Mo. Jan 12, 2010) (emphasis added); *see also Burch*, 500 F. Supp. 2d at 1187 (concluding that at the conditional certification stage, plaintiffs are not required to provide evidence that they are identically situated to putative class members); *In re RBC Rauscher Overtime Litig.,* 703 F. Supp. 2d 910, 963 (D. Minn. 2010) (same).

### 1. The standard under the first stage for certification is an exceedingly "lenient" one.

Consistent with the principles delineated above, conditional certification is liberally granted. *See, e.g.*, *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005); *McKinzie v. Westlake Hardware, Inc.*, No. Civ. A. 09-cv-0796, 2010 U.S. Dist. LEXIS 58078, at *8-9 (W.D. Mo. June 11, 2010). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Dominquez v. Minn. Beef Indus., Inc*., No. Civ. A. 06-1002, 2007 U.S. Dist. LEXIS 61298, at *6 (D. Minn. Aug. 21, 2007); *Burch*, 500 F. Supp. 2d at 1190 (recognizing that the first stage notice standard is "low"); *Loomis v. CUSA, LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009) (recognizing that plaintiff's burden "is not onerous"); *Mahmood v. Grantham Univ., Inc.*,

2011 U.S. Dist. LEXIS 53924, at *4, n.1 (W.D. Mo. May 19, 2011) (citing to Eighth Circuit district court orders, which describe the initial burden as "modest" and "not rigorous").

The frequency with which conditional certification is granted is not surprising given that the burden to prove that the class members are "similarly situated" at the first stage only requires a modest factual showing. *Davis,* 408 F. Supp. 2d at 816. "Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Hldgs*., 248 F.R.D. 225, 227 (E.D. Mo. 2008); *see also Dege v. Hutchinson Tech., Inc.*, No. Civ. A. 06-3754, 2007 U.S. Dist. LEXIS 12471, at *6 (D. Minn. Feb. 22, 2007) ("Plaintiffs' affidavits establish a colorable basis for their claim that the putative class members were victims of a common practice of not compensating employees[.]").

Here, Plaintiff has easily exceeded the modest factual showing requirement by presenting substantial evidence, including declarations, interrogatory answers from Defendant, and pay records.

### 2. After discovery is complete, the court makes a final decision on certification at the second stage.

In the second step of the class certification process, a defendant may move to have the class decertified. This is generally done after the close of discovery, or at least where "discovery is largely complete and the matter is ready for trial." *Huang v. Gateway Hotel Hldgs*., 248 F.R.D. 225, 227 (E.D. Mo. 2008) (quoting *Hipp v. Liberty Nat. Life Ins. Co*., 252 F.3d 1208, 1218 (11th Cir. 2001)). At the second stage, the Court has much more information upon which to make its decision and can make a factual determination based on the complete record. *Burch*, 677 F. Supp. 2d at 1113; *Loomis*, 257 F.R.D. at 676. The court can then decide whether the plaintiffs are "similarly situated" and can proceed to trial, or whether the case should be fully or partially

decertified. *Carlson v. C.H. Robinson Worldwide, Inc.*, No. Civ. A. 02-3780, 2006 U.S. Dist. LEXIS 71483, at *8 (D. Minn. Sept. 26, 2006).

**B. The Court should authorize notice in this case because the Plaintiff clearly meets the lenient "similarly situated" standard.  Optimal's straight time for overtime pay rate policy is a company-wide "decision, policy or practice" sufficient to authorize notice to all of the potential class members.**

The facts in this case are very similar to several cases in the Eighth Circuit where conditional certification was granted. *See, e.g., McCauley v. First Option Mortgage, LLC*, No. Civ. A. 4:10-cv-980, 2010 U.S. Dist. LEXIS 91375 (E.D. Mo. Sept. 2, 2010); *See Carden v. Scholastic Book Clubs, Inc.*, No. Civ. A. 2:10-cv-1112, 2011 U.S. Dist. LEXIS 73590 (W.D. Mo. July 8, 2011).

In *McCauley v. First Option Mortgage, LLC*, a former employee of First Option Mortgage brought a collective action lawsuit alleging that the company failed to properly calculate overtime payments to her and a class of loan officers. *See McCauley v. First Option Mortgage, LLC*, No. Civ. A. 4:10-cv-980, 2010 U.S. Dist. LEXIS 91375, at *1-3 (E.D. Mo. Sept. 2, 2010).  In particular, the plaintiff alleged that the company failed to correctly "calculate the overtime of pay due loan officers, by failing properly to include commission compensation in said calculation..." *Id*.  The defendant argued that conditional certification was inappropriate because of individualized inquiries amongst the class members. *Id*. at *3.  The *McCauley* Court rejected this argument and held that the affidavits submitted by the plaintiffs "provide enough evidence" to demonstrate the employees were similarly situated and subject to a common practice. *Id*. at *10.  The *McCauley* Court then authorized class notice.  *Id*. at *15.

Similarly, in *Carden v. Scholastic Book Clubs, Inc.*, the plaintiff alleged that her employer failed to include non-discretionary bonuses in the calculation of the overtime rate of pay. *See Carden v. Scholastic Book Clubs, Inc.*, No. Civ. A. 2:10-cv-1112, 2011 U.S. Dist. LEXIS 73590,

at *2 (W.D. Mo. July 8, 2011).  The defendant denied the allegation and argued that there was no "single policy, plan or decision" to deprive the plaintiff or the class members of overtime pay. *Id*. at *6.  The *Carden* Court rejected the defendant's arguments and held that the plaintiff presented sufficient evidence to support conditional certification. *Id*. at *8.  The *Carden* Court reiterated that the plaintiffs "need not show that members of the conditionally certified class are actually similarly situated."  *Id*.  That determination is to be made after the close of discovery. *Id*.  Ultimately, the *Carden* Court held that the declarations submitted by the plaintiff constituted sufficient evidence of a common policy that violated the FLSA. *Id*

The facts in this case are very similar to the facts in *McCauley* and *Carden*.  Like the employers in *McCauley* and *Carden*, Optimal had a company-wide policy that failed to provide overtime to non-exempt employees. Moreover, just like in *McCauley* and *Carden*, the Plaintiff has submitted multiple declarations and other evidence that establish a common policy of improperly compensating employees for overtime hours.  That Plaintiff and the opt-in Plaintiffs were paid under the same illegal straight time for overtime pay system demonstrates the policy at issue in this case was not limited to Plaintiff or only to inspectors that Defendant staffed certain customers—instead it was the uniform way Defendant paid all of its inspectors.  Just as in *McCauley* and *Carden*, class notice should be issued in this case.

**C. Even if there was not a single, policy or plan applicable to the Plaintiff and Class Members, they are still "similarly situated" because their job title, job duties, and pay structure are nearly identical.  Thus, no individual issues exist amongst the Class Members.**

Conditional certification is proper because the Plaintiff and the Class Members:

- Are manual laborer inspectors
- Who are non-exempt employees
- Who perform the SAME primary duties
- Who are paid under the SAME pay system
- Who regularly work overtime hours each workweek

In short, the Class Members are similarly situated for FLSA purposes in every material respect. This is precisely when conditional certification is most appropriate. *See, e.g., Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007). Indeed, these facts demonstrate that the Plaintiff has satisfied his burden of demonstrating a factual nexus between the manner in which the employer's alleged policy affected him and the manner in which it affected other employees.

**D.** **The legal and factual issues in this case are the same and there exists no individualized defenses, further evidencing that the Class Members are "similarly situated."**

The legal issues in this case are the same amongst each Class Member because they perform the same work and are paid in the same manner. The Plaintiff and Class Members were paid under Defendant's day rate pay system. Consequently, the liability facts are essentially the same amongst the Class Members. As a result, a decision with respect to Plaintiff would apply equally to all Class Members. *See Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010) (granting certification of FLSA case in part because "the City of Fort Wayne has not articulated any particularized defenses in this action, that is, their defenses would apply to all Plaintiffs, not just a particular Claimant."). Likewise, there are no individualized defenses in this case.[17]

**E.** **The quantum of evidence submitted by the Plaintiff substantially exceeds the evidence found sufficient to warrant notice by courts in the Eighth Circuit. Conditional certification should promptly be issued.**

---

[17] Even had it done so, such defenses are inappropriate at this stage. Any arguments regarding possible individual defenses to the FLSA claims are not to be addressed in the first stage. Such arguments are only appropriate when the court rules on the merits of the plaintiff's claims at the end of discovery. *Robertson v. LTS Management Servs., LLC*, 642 F. Supp. 2d 922, 926 (W.D. Mo. 2008).

Other courts weighing evidence and allegations have granted class notice with far less evidence than Plaintiff has presented in this motion. *See, e.g., Ondes v. Monsanto Co*., No. Civ. A. 4:11-cv-197, 2011 U.S. Dist. LEXIS 142604 (E.D. Mo. Dec. 12, 2011) (granting conditional certification based on the affidavit of the plaintiff only); *Boyle v. Barber & Sons, Co*., No. Civ. A. 03–0574, 2004 U.S. Dist. LEXIS 29168 (W.D. Mo. May 21, 2004) (granting conditional certification based on the affidavit of only *one* former employee; *Zhao v. Benihana, Inc.*, No. Civ. A. 01-1297(KMW), 2001 U.S. Dist. LEXIS 10678 (S.D. N.Y. May 7, 2001) (one declaration based on the employee's "best knowledge" sufficient); *Brown v. Money Tree Mortg. Inc*., 222 F.R.D. 676, 680 (D. Kan. 2004) (two affidavits); *Williams v. Sprint/United Mgmt. Co*., 222 F.R.D. 483, 487 (D. Kan. 2004) (allegations in complaint were "more than sufficient to support provisional certification")).

By comparison, Plaintiff has submitted the following evidence:

1) Multiple declarations detailing the violations, their uniformity across the company, and that other employees desire to join this suit;
2) The offer letters that provide on their faces that the Plaintiff and Opt-in Plaintiffs will be paid in a manner that violates the FLSA;
3) Pay records showing the violations at issue; and
4) Defendant's answers to interrogatories.

Therefore, Plaintiff's evidence more than justifies conditional certification and notice to the Class Members.

**F. The proposed notice is timely, accurate and informative.**

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. Use of court-authorized notice also prevents "misleading communications." *Id.* at 172. Plaintiff's proposed court-approved notice to the potential opt-ins is "timely, accurate, and informative," as required. *Id.* It provides notice of

the pendency of the action and of the opportunity to opt in. Plaintiff's legal claims are accurately described. Potential opt-ins are advised that they are not required to participate. The notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in the FLSA action. *See* 29 U.S.C. § 215(a)(3).

### G. The notice should be sent via regular mail, via email, and via text message.

The point of sending out notice to class members is for them to receive it, become aware of the pending litigation, and make a decision regarding joining the case. *Hoffmann-La Roche*, 493 U.S. at 170.   In accordance with the purpose of the notice process, Plaintiff proposes that the notice and consent forms be mailed by first class mail, by electronic mail, and by text message to all current and former inspectors employed by Defendant.[18]   Sending the Notice of Rights and Consent Form via these three methods will ensure that the class member receives the notice, becomes aware of the litigation, and makes a decision regarding joining the case.

---

[18] Email notice is a common form of notification in FLSA cases. *Jones v. JGC Dallas LLC*, 2012 U.S. Dist. LEXIS 185042 (N.D. Tex. Nov. 29, 2012)(rep. and recommendation adopted, 2013 U.S. Dist. LEXIS 8865 (N.D. Tex. Jan. 23, 2013)) ("The attached form of notice should be approved by the Court, as should Plaintiffs' request to provide notice to the conditionally certified class via regular mail and email in the manner described above."); *See Phelps v. MC Comm'ns, Inc.*, U.S. Dist. LEXIS 84428 (D. Nev. Aug. 1, 2011)(The Court will permit Plaintiffs to email the notice to those employees for whom Defendants have email addresses, as well as send it by first class mail. Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees.); *Goudie v. Cable Communs., Inc.,* No. 08-507-AC, 2008 U.S. Dist. LEXIS 125446, at *26 (D. Or. Aug. 20, 2008) ("The court concludes that the names, addresses, phone numbers, and e-mail addresses of technicians are sufficient to permit notice and communication with potential members of the putative collective action."); *Beall v. Tyler Techs., Inc*., 2009 U.S. Dist. LEXIS 52990 (E.D. Tex. June 23, 2009)(Court granted class notice via email.); *Eggleston v. Sawyer Sportsbar, Inc.*, 2010 U.S. Dist. LEXIS 65022 (S.D. Tex. June 28, 2010)(Court granted class notice via email); *In re Deloitte & Touche, LLP*, 2012 U.S. Dist. LEXIS 12641 (S.D.N.Y. Jan. 17, 2012); *White v. Integrated Elec. Techs., Inc.*, 2013 U.S. Dist. LEXIS 83298 (E.D. La. June 13, 2013)("Plaintiffs have submitted ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize email to provide notice of collective actions to potential class members."); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012)("Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail and by email..."); *Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012)("[G]iven the reality of communications today ... the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt.*, 2011 U.S. Dist. LEXIS 82204 (E.D.N.Y. July 27, 2011)("[T]he Court sees email as a relatively unobtrusive option" for providing notice to class members); *Denney v. Lester's, LLC*, 2012 U.S. Dist. LEXIS 125560 (E.D. Mo. Sept. 5, 2012)("Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail..."); *Santiago v. Amdocs, Inc.*, 2011 U.S. Dist. LEXIS 146126 (N.D. Cal. Dec. 19, 2011)(Notice shall be "disseminated via electronic mail.").

Email notice is especially appropriate in this case because of the extended period of time the Class Members spend away from their homes performing work for Defendant.[19]  These are simply not employees that have the ability to check their physical mail every day because they spend so much of their time aware from home working for Defendant or companies like Defendant. Additionally,  while individuals may move from residence to residence, a person's email address typically does not change.  Further, while mail correspondence may be lost, stolen, or not forwarded to a new address, email correspondence is secure, reliable, and password protected. Accordingly, email communication is an equally if not more reliable method of communicating to the class members regarding the pendency of this action.  The subject line of the email notice would read "Important Notice Re: Wage Lawsuit Against Optimal Energy." The body of the email would include the language of the Notice of Rights.  The Consent Form would be attached to the email and/or available for electronic execution via a hyperlink in the body of the email.

It is undisputed that "we live in a time when all manner of commercial transactions are routinely cemented by electronic submission." *Mraz v. Aetna Life Ins. Co.,* 2014 U.S. Dist. LEXIS 142923, at *15 (M.D. Pa. Oct. 7, 2014).  In fact, this Motion is being filed through the federal court system's electronic case filing system and all parties are served via email notice precisely because it is an instantaneous, inexpensive, and secure way to communicate.  With this in mind, a large number of courts have authorized email notice.  "With regard to the use of email to notify potential plaintiffs of this litigation, 'communication through email is [now] the norm.'" *Butler v. DirectSAT USA, LLC,* 876 F. Supp. 2d 560, 575 (D. Md. 2012).  "Acknowledging its efficacy and common usage, courts increasingly have authorized notice by email in FLSA cases." *Landry,* 2017 U.S. Dist. LEXIS 66497, *121 (D.N.M. May 2, 2017). "Email is an efficient, reasonable, and low-

---

[19] *See* Exhibit 1-4.

cost supplemental form of notice." *Phelps v. MC Communications, Inc*., 2011 U.S. Dist. LEXIS 84428, at *18; *Landry v. Swire Oilfield Servs., L.L.C.,* 2017 U.S. Dist. LEXIS 66497, *121 (D.N.M. May 2, 2017) (approving email notice).   The disclosure of email addresses is not unduly intrusive on the privacy and personal interests of class members. *Jones v. JGC Dallas LLC,* 2012 U.S. Dist. LEXIS 185042, at *25 (N.D. Tex. Nov. 29, 2012).   Without email notice, the notices are more likely to be returned due to outdated or inaccurate addresses.   This in turn will result in Plaintiff requesting an extension of the opt-in period to accommodate those class members, thereby delaying the timely resolution of this matter.

The same reasoning that applies in allowing email notice makes notice via text message also appropriate.   Courts similarly have authorized notice by text message, observing that such notice "is likely to be a viable and efficient means of communicating with many prospective members of [a] collective action."   *Landry,* 2017 U.S. Dist. LEXIS 66497, *121 (D.N.M. May 2, 2017).   As one court put it, "[i]ndeed, given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional, first-class mail." *Id*.; *see also*, *Bhumithanarn v. 22 Noodle Mkt. Corp.,* 14-CV-2625 RJS, 2015 U.S. Dist. LEXIS 90616, at *12 (S.D.N.Y. July 13, 2015); *McKinzie v. Westlake Hardware, Inc.,* No. 09–cv–796 (FJG), 2010 U.S. Dist. LEXIS 58078, at *14 (W.D. Mo. Jun. 11, 2010) (ordering defendant to provide cellular phone numbers following conditional certification). As another court phrased the issue when ordering notice via text message, "in the world of 2017 email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that using email and texts to notify potential class members is entirely appropriate." *Vega v. Point Sec., LLC*, No. A-17-CV-049-LY, 2017 U.S. Dist. LEXIS 148105, at *12 (W.D. Tex. Sep. 13, 2017).

The text message would read "Important Notice Regarding Lawsuit Against Optimal Energy.  To read more about it or join the Lawsuit click this link [*link to Notice of Rights and Consent Form*]."  Given the purpose of the FLSA's notice, this Court should allow the class members to receive the notice via mail, email, and text message to ensure class members receive the notice, review the notice, and make an informed decision on whether to join the lawsuit.

### H.  The Notice Process.

Plaintiff requests that within ten (10) days of granting conditional certification, Optimal be ordered to produce in a computer readable format such as an excel spreadsheet the names, all known addresses, all phone numbers (home, mobile, etc.), all known email addresses (work and personal), job titles, and dates of employment for all the class members employed at any time during the three years preceding the granting of this Motion to the present ("Class List").

Plaintiff's counsel will oversee the notice process (regular mail, electronic mail, and text message notice) and pay the up-front charges for same (postage, copying, etc.).  Within ten (10) days of the production of the Class List, Plaintiff's counsel will mail, email, and text the Notice of Rights and Consent Form attached hereto as Exhibits 10.

Those class members interested in participating would be required to return consents to Plaintiff's counsel for filing with the Court within 60 days of the mailing.  After 30 days from the original mailing, Plaintiff requests that it be allowed to send a second Notice of Rights and Consent Form as a reminder to those class members who have not yet opted into the lawsuit.  Such reminder notices would only go to those class members who have not opted in.  The reminder notice would consist of the same notice sent at the outset of the notice period.  "Those courts that allow a reminder emphasize that it serves the FLSA's broad remedial purpose by ensuring that 'as many potential plaintiffs as possible [are informed] of the collective action and their right to opt-in.'"

*Landry,* 2017 U.S. Dist. LEXIS 66497, *122 (D.N.M. May 2, 2017) (*citing, Chhab v. Darden Rests., Inc.,* 2013 U.S. Dist. LEXIS 135926, at *51);

## I.    Opt-in Plaintiffs should be allowed to Execute the Consent Form Electronically.

In the past, "[c]ourts have approved the use of online, electronic signature opt-in forms." *Landry,* 2017 U.S. Dist. LEXIS 66497, *122 (D.N.M. May 2, 2017); see, e.g., *Dyson v. Stuart Petrol. Testers, Inc.,* 308 F.R.D. 510, 517 (W.D. Tex. 2015); *Bland v. Calfrac Well Servs. Corp.,* 2013 U.S. Dist. LEXIS 113094, at *3 (W.D. Pa. 2013); *White v. Integrated Elec. Techs., Inc.,* 2013 U.S. Dist. LEXIS 83298, at *9 (E.D. La. 2013).  As one court framed the issue, "we live in a time when all manner of commercial transactions are routinely cemented by electronic submission." *Landry,* 2017 U.S. Dist. LEXIS 66497, *122 (D.N.M. May 2, 2017) (citing *Mraz v. Aetna Life Ins. Co.,* 2014 U.S. Dist. LEXIS 142923, at *5).   Under the Electronic Signatures in Global and National Commerce Act "with respect to any transaction in or affecting interstate or foreign commerce" a "signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001(a)(1).  Electronic execution of legal documents is binding, and convenient for the user and as such should be allowed.  As with the reasons for approving notice by email and text message, permitting electronic execution of the consent form is particularly appropriate in a case such as this one where the nature of the class member's work require they be away from their homes for an extended period of time.

## III.    CONCLUSION

For the reasons stated herein, Plaintiff requests the Court grant his motion for conditional certification, order the requested discovery, and approve his proposed notice plan.

Respectfully submitted,


By: */s/ John Neuman*
John Neuman
SOSA-MORRIS NEUMAN
ATTORNEYS AT LAW
jneuman@smnlawfirm.com
Texas State Bar No. 24083560
5612 Chaucer Drive
Houston, Texas 77005
Telephone: (281) 885-8630
Facsimile: (281) 885-8813


Leo F.J. Wilking
WILKING LAW FIRM, PLLC
P.O. Box 3085
Fargo, North Dakota 58108-3085
Phone:  (701) 356-6823
Fax:  (701) 478-7612
ND State Bar No. 03629
lwilking@wilkinglaw.com

Attorneys for the Plaintiff and Class Members

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing through the District of North Dakota CM/ECF system on October 2, 2018 which will provide a copy to all counsel of record by electronic mail.

/s/ John Neuman<br>
John Neuman
